UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL E. PARTRIDGE,<br>PAUL E. PARTRIDGE, JR.<br><br>        *Plaintiffs,*<br>v.<br><br>APPLICA CONSUMER PRODUCTS, INC.,<br>BRINK'S HOME SECURITY, INC.<br><br>        *Defendants.* | Civil Action No. 05-10601-MLW |

**DEFENDANT BRINK'S HOME SECURITY, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**I.    Introduction**

Plaintiffs Paul E. Partridge and Paul E. Partridge, Jr. ("Plaintiffs") allege in the complaint that Brink's Home Security, Inc. ("Brink's") is liable for damages purportedly caused by the malfunctioning of a home security system that Brink's installed in Plaintiffs' home (the "Complaint"). The Complaint, however, conspicuously ignores that Plaintiffs and Brink's entered into a contract that expressly governs the relationship between the parties and the claims before this Court. Pursuant to the terms of that contract, this Court should dismiss the Complaint for several reasons.

As a threshold matter, this Court should dismiss all of Plaintiffs' claims because they are time barred. (See infra at Point III.B.) The contract provides for a limitations period of two years and one day within which all actions relating to the contract are required to be commenced.

Plaintiffs did not commence this suit until almost three years after the cause of action arose. Therefore, the Court should dismiss the Complaint.

Even if the Court finds that Plaintiffs' claims are not time barred, it should nonetheless dismiss Plaintiffs' causes of action for express and implied warranties. (See infra at Point III.C.) First, the contract expressly releases Brink's for liability for any claim based upon breach of express warranty. Therefore, the Court should dismiss this claim (Count I). Second, well settled Massachusetts law holds that no implied warranties arise in connection with services contracts, like the contract at issue here. Accordingly, Plaintiffs cannot state a claim for breach of implied warranty of merchantability (Count II) and fitness for a particular purpose (Count III) and these counts should be dismissed.

## II.  Statement of Facts

On December 12, 2000, Plaintiffs entered into a contract with Brink's for the installation and maintenance of a home security system (the "Contract").[1] (A copy of the Contract is attached as Exhibit 1) The Contract provides that Brink's will remain the owner of the system unless Plaintiffs pay an additional charge at the time of installation to purchase the equipment.[2] (Contract § 5(a).) In a Section entitled "Limitations on Liability," the Contract also states that Brink's "does not make any express . . . warranty . . . ." (Id. § 7(a).) Finally, the Contract provides that "no suit or action that relates in any way to this Agreement (whether based upon contract, negligence or otherwise) shall be brought against the other more than two (2) years and one (1) day after the accrual of the cause of action therefore." (Id. § 12(e).)

---

[1] It appears that only Paul E. Partridge ("Partridge") is a party to the Contract. (See Contract.)

[2] At no time did Plaintiffs pay an additional charge to purchase the equipment. (See Affidavit of Don Breaux (the "Breaux Affidavit") attached as Exhibit 2.)

On April 12, 2002, a toaster owned by Plaintiffs allegedly malfunctioned causing a fire, which damaged Plaintiffs dwelling and personal property and purportedly caused Plaintiffs to suffer physical injury. (Complaint ¶¶ 7-9.) Plaintiffs allege that their home security system malfunctioned exacerbating the damages caused by the fire. (Contract ¶¶ 11-12.)

On March 11, 2005, nearly three years after the fire, Plaintiffs commenced this action against Brink's -- as well as Applica Consumer Products, Inc., the manufacturer of the toaster -- for breach of express warranty (Count I) and implied warranties of merchantability and fitness for a particular purpose (Counts II and III), negligence (Count IV), negligent infliction of emotional distress (Count V), and violation of Chapter 93A (Count VI).

**III.   Argument**

    A.   Legal Standard

A Rule 12(b)(6) motion will be granted if the complaint shows no set of facts upon which the plaintiff is entitled to relief. See Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). While the pleading requirements are minimal, however, they "are not tantamount to nonexistent." Id. As the First Circuit has emphasized, "the threshold may be low, but it is real . . . ." Id.

While ordinarily a court may consider only the Complaint and documents incorporated therein when ruling on a motion to dismiss, the First Circuit has held that when "a complaint's factual allegations are expressly linked to -- and admittedly dependant upon -- a document (the authenticity of which is not challenged), then the court can review it upon a motion to dismiss." Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001). Here, although the Complaint makes no explicit reference to the Contract, because Plaintiffs'

allegations arise entirely from the subject matter governed by the Contract, the Court may properly consider it in ruling on Brink's motion to dismiss. See id.

B.  Plaintiffs' Claims Are Barred By The Contractual Limitations Period

Courts in this Circuit have repeatedly held that parties to a contract may agree upon a limitations period shorter than that provided by the applicable statute of limitations as long as it is reasonable. See Bull HN Info. Sys. Inc. v. Hutson, 118 F. Supp.2d 55, 61 (D. Mass. 1999) ("[T]he law on limitation provisions is well-settled, to wit, 'contracting parties may agree upon a short limitation period as long as it is reasonable.'"); I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc., 7 F. Supp.2d 79, 86 (D. Mass. 1998) ("[T]he law is settled in this Circuit, based in Massachusetts law, that contracting parties may agree upon a shorter limitations period as long as it is reasonable.").

Here, the Contract provides as follows:

> You [Partridge] and Brink's agree that no suit or action that relates in any way to this Agreement (whether based upon contract, negligence, or otherwise) shall be brought against the other more than two (2) years and one (1) day after the accrual of the cause of action therefore.

(Contract § 12(e) (emphasis added).)  The fire in Plaintiffs' home occurred on April 12, 2002. Plaintiffs did not commence this action -- which relates entirely to the Contract -- until March 11, 2005, nearly three years later and well after the expiration of the agreed upon limitations period.  As a result, Plaintiffs are time barred from bringing the claims set forth against Brink's in the Complaint.

      C.      **Even If Plaintiffs' Claims Were Not All Time Barred, Which They Are, The Court Should Dismiss Plaintiffs' <u>Claims For Breach Of Express And Implied Warranties</u>**

            1.      **Plaintiffs' Claim For Breach Of Express Warranty <u>Is Barred By Exculpatory Language In The Contract</u>**

The Court should also dismiss Plaintiffs' claim for breach of express warranty because the Contract contains an exculpatory clause relieving Brink's of liability. Massachusetts courts routinely enforce exculpatory clauses disclaiming a contracting party's liability. <u>See</u> <u>Minassian v. Ogden Suffolk Downs, Inc.</u>, 400 Mass. 490, 492 (Mass. 1987); <u>Bouvier Bros., Inc. v. Baker Protective Servs.</u>, 2 Mass. L. Rep. 101 (Super. Ct. 1994) ("[I]t is well settled that a contracting party can utilize an exculpatory clause to exempt it from its own liability.").

Here, the Contract expressly disclaims Brink's liability for breach of express warranty. Specifically, Section 7 provides that "<u>Brink's does not make any express . . . warranty . . . .</u>" (Contract at § 7(a) (emphasis added).) Again, Brink's highlighted the importance of this provision by requiring the Plaintiffs to initial language stating that "Brink's calls your special attention to . . . Section 7 – LIMITATION OF LIABILITY." Moreover, in bold and all capital letters adjacent to the Contract's signature block is the following language: "YOU FURTHER ACKNOWLEDGE THAT YOU UNDERSTAND SECTION 7 WHICH LIMITS BRINK'S LIABILITY . . . ." Because Brink's effectively relieved itself of liability for breach of express warranty, the Court should dismiss Count I (Breach of Express Warranty) of the Complaint.

            2.      <u>The Complaint Fails To State A Claim For Breach Of Implied Warranties</u>

The Court should also dismiss Plaintiffs' claims for breach of implied warranties of merchantability and fitness for a particular purpose for failure to state a claim. It is well settled that these implied warranties arise <u>only</u> from the transfer of a possessory interest in goods. <u>See</u>

G.L. ch 106, § 2-314(1); see also ITT Corp. v. LTX Corp., 926 F.2d 1258, 1266 (1st Cir. 1991). Such warranties do not attach to service contracts.  See ITT Corp., 926 F.2d at 1266.

Here, the Contract by its own terms is for the performance of a service, not the transfer of a possessory interest in goods.  It states in plain language that "Brink's will provide [Partridge] with the service covered by the" Contract, i.e., the installation and maintenance of a security system.  (Contract at § 1 (emphasis added).)  Moreover, the Contract provides that Plaintiffs "agree that Brink's is the owner of the protective equipment at all times" and that the Contract "is not a lease."[3]  (Contract at § 5(a).)  Underscoring the importance of this ownership provision, prominently placed at the beginning of the Contract is a section stating that "Brink's calls your special attention to . . . Section 5(a) Brink's OWNERSHIP OF THE PROTECTIVE EQUIPMENT," which Plaintiffs were required to acknowledge -- and did acknowledge -- by placing initials on a line provided below.  (See Contract at Introductory Explanation.)[4]

Because the Contract is for services only -- not for the transfer of a possessory interest in goods -- there are no implied warranties of merchantability or fitness for a particular purpose. Accordingly, this Court should dismiss Counts II (Breach of Implied Warranty of Merchantability) and III (Breach of Implied Warranty of Fitness for Particular Purpose) of the Complaint.

**IV.   Conclusion**

---

[3] As noted above, Partridge did not exercise his right to purchase the security system pursuant to the Agreement.

[4] If the Court rules that Plaintiffs' claims are not time barred and reaches the merits of this argument, it will need to consider the Breaux Affidavit to determine whether Plaintiffs paid an additional fee pursuant to the Contract to purchase the equipment.  Brink's recognizes that at that time the Court may convert this motion into one for summary judgment.  If that happens, however, Plaintiffs should not be heard to complain that additional discovery is warranted pursuant to Rule 56(f).  If Plaintiffs wish to adduce evidence that Partridge paid to purchase the equipment, they may do so by way of affidavit.

Based on the foregoing, Brink's respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety.

BRINK'S HOME SECURITY, INC.,

By its attorneys,

          /s/ Jillian B. Hirsch
Jonathan I. Handler (BBO #561475)
Jillian B. Hirsch (BBO #659531)
DAY, BERRY & HOWARD LLP
260 Franklin Street
Boston, Massachusetts 02110-3179
(617) 345-4600

Dated: April 18, 2005

## CERTIFICATE OF SERVICE

    I, Jillian B. Hirsch, do hereby certify that on this 18th day of April, 2005, I served the within **Defendant Brink's Home Security, Inc.'s Memorandum in Support of Its Motion to Dismiss** by causing a copy to be mailed, first class postage prepaid and addressed to counsel for plaintiffs, Jason E. Cohn, Tommasino & Tommasino, Two Center Plaza, Boston, MA 02810, and counsel for defendant Applica Consumer Products, Inc., Geoffrey Coan, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 155 Federal Street Boston, MA 02110.

                                                         /s/ Jillian B. Hirsch
                                                         Jillian B. Hirsch

# EXHIBIT 1



## PROTECTIVE SERVICE AGREEMENT
(Residential Premises)

BRINK'S HOME SECURITY, INC.
155 West Street, Suite 5
Wilmington, Massachusetts 01887
(978) 657-0443

Customer Number: 6 1 7 / 0 7 4 8 7 7 5 9

This Agreement is made between Brink's Home Security, Inc. ("Brink's") whose address is shown above, and

__PAUL GARTNAGE__
Your Name(s) (Please Print)

Billing address if different from installation address:

__61 GRAYFIELD AVE__ __WEST ROX__ __MA__ __02132__
Street & Number     City     County     State     Zip Code

---

**Introductory Explanation**

By signing this Agreement, you agree to be bound by all of its provisions, just as Brink's does. Brink's calls your special attention to Section 2(f) APPLICABLE TAXES, Section 3 - Agreement for a THREE YEAR TERM, Section 5(a) Brink's OWNERSHIP OF THE PROTECTIVE EQUIPMENT, and Section 7 - LIMITATION OF LIABILITY.

_homeowner's initials_

You acknowledge that you are the owner of the installation address listed in the Installation Work Order. _homeowner's initials_

---

**Section 1. SERVICE:**
(a) Brink's will provide you with the service (the "Service") covered by this Protective Service Agreement.
(b) Your installation Work Order lists items of standard protective equipment ("Standard Protective Equipment") that Brink's is furnishing to you under this Agreement. If you have agreed to have Brink's install additional Protective Equipment ("Additional Protective Equipment"), it is also listed in the Installation Work Order. As used in this Agreement, the term "Protective Equipment" means the Standard Protective Equipment and the Additional Protective Equipment.
(c) The Service is subject to all the terms and conditions of your entire agreement (please see Section 12(a) for a list of what constitutes your entire agreement). As part of the Service, Brink's or one of its authorized contractors will install and make operational the Protective Equipment at the address listed in the Installation Work Order. When Brink's receives a signal indicating activation of the Protective Equipment at your installation address, Brink's will observe the procedures described in your Customer Emergency Information Schedule.

**Section 2. FEES:**
(a) You agree to pay Brink's the connection fee shown in the Installation Work Order for the Standard Protective Equipment. You will also pay the full installation price of any Additional Protective Equipment you select.
(b) During the three-year initial term of this Agreement, you will pay to Brink's, a monthly monitoring fee of $__24.95__. You will pay your monthly fee by check, money order or direct debit.
(c) Please initial next to the additional services you have selected.
   ____ You agree to pay an additional $_____ per month for monitoring
   _initial_ of _____.
   ____ You agree to pay an additional $__4.00__ per month for Extended
   _initial_ Service Plan coverage described in Section 6(b) below.
(d) If you prefer to pay fees other than on a monthly basis, please indicate your choice:
   ____ quarterly            ____ six months
   ____ one year             ____ three years

**(e) FINANCIAL DISCLOSURE STATEMENT**

ANNUAL PERCENTAGE RATE - The cost of your credit as a yearly rate is 0%.
FINANCE CHARGE - The dollar amount the credit will cost you is $0.00
Amount Financed and Total of Payments* - The amount of credit provided to you or on your behalf, and the amount you will have paid after you have made all payments as scheduled is _____.
*The amount financed and the total of payments equal 36 times _____, the initial term monthly fee. Brink's will add applicable service taxes to the monthly fee and charge the taxes to you.
Total Sale Price - The total sale price of the monthly services provided is _____.

**PAYMENT SCHEDULE**

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 1 | _____ | On the day of installation |
| 35 | _____ | Monthly, by the date shown in your invoice |

Late Charge - Brink's has the right to receive a late payment charge at the rate of two-thirds percent (2/3%) per month (8% per year) on any balance remaining unpaid for 15 days after the due date, or any lesser rate if required by law.

Prepayment - If you prepay the Total of Payments prior to the end of the term of this Agreement, there is no penalty or refund.

See Section 10 of the Protective Service Agreement for information about nonpayment, default and Brink's right to accelerate the maturity of the obligation.

ADDITIONAL NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(f) You will pay any and all applicable sales, use, service, property or other taxes in connection with Service, including the installation and monitoring of the Protective Equipment. UNLESS YOU HAVE PAID AN ADDITIONAL FEE TO PURCHASE THE PROTECTIVE EQUIPMENT, YOU WILL BE BILLED A PROPORTIONATE SHARE OF THE AMOUNT REQUIRED TO REIMBURSE BRINK'S FOR THE PROPERTY TAX IT PAYS ON ALL PROTECTIVE EQUIPMENT INSTALLED FOR YOU AND OTHERS IN YOUR TAXING JURISDICTION(S). (IN SOME STATES, THE ALLOCATION IS MADE ON A STATEWIDE BASIS DUE TO OVERLAPPING TAXING JURISDICTIONS.) THIS AMOUNT WILL BE BILLED ONCE EACH YEAR AND GENERALLY RANGES FROM $5.00 TO $15.00 PER YEAR. The value of the Protective Equipment for this calculation is the company-wide, per installation, capitalized protective equipment cost for the year the equipment was installed. The amount billed will not necessarily be equal to the amount of property tax that would have been paid if the specific equipment installed in your location was assessed on an individual basis.

**Section 3. THREE-YEAR TERM AND RENEWAL TERMS:**
(a) You will take and pay for the Service during an initial term of three years commencing from the date Brink's makes the Protective Equipment operational. (This obligation continues whether or not you remain the occupant of the installation address.) Thereafter, this Agreement will automatically continue for successive one-year renewal terms unless you or Brink's give written notice of cancellation to the other at least 60 days before the initial or renewal term ends.
(b) If the renewal fee is more than the initial or renewal fee you have been paying, Brink's will notify you of the new renewal fee at least 75 days before the initial or renewal term ends. If your renewal fee reflects any increase over whatever fee

---

THIS AGREEMENT CONSISTS OF SECTIONS 1 THROUGH 12 APPEARING ON THE FRONT AND REVERSE SIDE. YOU ACKNOWLEDGE THAT PRIOR TO SIGNING THIS AGREEMENT YOU RECEIVED, READ AND UNDERSTOOD A LEGIBLE, EXACT AND COMPLETELY FILLED-IN COPY OF THIS AGREEMENT [INCLUDING THE DOCUMENTS LISTED IN SECTION 12(a)] AND THAT UPON SIGNING SUCH COPY WAS ALSO SIGNED BY BRINK'S. YOU FURTHER ACKNOWLEDGE THAT YOU UNDERSTAND SECTION 7 WHICH LIMITS BRINK'S LIABILITY AND THAT YOU MAY INCREASE BRINK'S LIMITATION OF LIABILITY BY PAYING AN ADDITIONAL CHARGE TO BRINK'S.

Signatures:
CUSTOMER: _[signature]_
CUSTOMER: _____
DATE: _____

If you were referred by an existing Brink's customer, we would appreciate your noting below the customer's name and phone number:

Referred by _____
(please print name, city, state)

Telephone (____) _____

**YOUR RIGHT TO CANCEL**
YOU MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. PLEASE SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

BRINK'S HOME SECURITY, INC.
By _[signature]_ Reg. No. ____
   Authorized Representative
DATE: __12/12/00__

BH-1104-GEN REV 10/99

you were most recently paying, you have the right to terminate this Agreement as provided in Section 3(a) above.
(c) By notice to you, Brink's may terminate this Agreement if Brink's determines that the Protective Equipment is generating excessive false alarms.

**Section 4. CUSTOMER EMERGENCY INFORMATION SCHEDULE:**
(a) You are furnishing to Brink's and you will keep current a Customer Emergency Information Schedule on the form you have received from Brink's. If you wish to make a change in your Customer Emergency Information Schedule, please call (800) 445-0872.
(b) Brink's has no obligation to telephone any emergency agency or person other than the agency or person named in your most recent Customer Emergency Information Schedule furnished to Brink's. YOU UNDERSTAND THAT BRINK'S DOES NOT REPRESENT OR PROMISE THAT ANYONE TELEPHONED BY IT WILL RESPOND TO THE CALL.

**Section 5. OWNERSHIP AND USE OF PROTECTIVE EQUIPMENT:**
(a) YOU AGREE THAT BRINK'S IS THE OWNER OF THE PROTECTIVE EQUIPMENT AT ALL TIMES. You agree that this Agreement is not a lease. You will not attempt to remove or sell any of the Protective Equipment. You agree that installation of the Protective Equipment does not create a fixture to your premises.
(b) You may pay an additional charge at the time of installation to purchase the Protective Equipment.
(c) You will provide single party phone lines, pest free space, adequate light and power for installation and operation of the Protective Equipment. You will follow all of Brink's instructions regarding repair and use of the Protective Equipment, and you will not allow alteration of the Protective Equipment except in writing by Brink's.
(d) You are responsible for complying with any local or other governmental ordinances or laws which may require any user of the Protective Equipment to obtain a license or permit. You also agree to pay Brink's for any fees Brink's is required to pay under laws in order to install the Protective Equipment in your location.
(e) You understand that local governments may impose fines, or charges for any false alarm. YOU AGREE TO ASSUME ALL RESPONSIBILITY FOR ANY FALSE ALARM GIVEN BY THE PROTECTIVE EQUIPMENT. You will indemnify and hold Brink's harmless from liability for false alarm charges and fees associated with reporting alarm signals.
(f) If Brink's reasonably determines that the Protective Equipment is generating an excessive number of false alarms or signals which may adversely affect Brink's monitoring facilities, Brink's may require you to pay a reasonable surcharge fee for processing false alarms or signals or Brink's may terminate this Agreement.

**Section 6. REPAIR SERVICE:**
(a) FREE REPAIR SERVICE: DURING THE NINETY DAY PERIOD FOLLOWING INSTALLATION OF THE PROTECTIVE EQUIPMENT, BRINK'S WILL AT YOUR REQUEST PERFORM ALL NECESSARY REPAIR OF THE PROTECTIVE EQUIPMENT DURING BRINK'S NORMAL BUSINESS HOURS AT NO CHARGE TO YOU SUBJECT TO THE EXCLUSIONS DESCRIBED BELOW.
(b) EXTENDED SERVICE PLAN: You may purchase an Extended Service Plan which provides for repair of the Protective Equipment at no charge after the initial ninety day free repair service period expires. Free repair service under the Extended Service Plan is subject to the conditions and exclusions described below. Extended Service Plan coverage will begin on the date the Protective Equipment is made operational and will continue for as long as you make all required payments. If you have chosen to receive the Extended Service Plan, you agree to pay the fees shown in Section 2(c) for an initial term of three years. At the end of the initial term this Extended Service Plan will automatically renew for successive one year terms. You or Brink's may cancel this Extended Service Plan by giving the other party notice of cancellation at least sixty days prior to the end of the then current term. Brink's may increase the required payment for any renewal term of the Extended Service Plan by giving you written notice of the new fee at least seventy five days prior to the end of the current term.
(c) EXCLUSIONS: Brink's excludes from the initial ninety day free service and the Extended Service Plan any repair or replacement of the Protective Equipment needed because of any event or condition beyond Brink's control such as misuse, negligence, accident, fire, acts of God, telecommunications failures, remodeling and repair or alteration by anyone other than Brink's. Also excluded are any necessary repairs to security window screens or curtains.
(d) REPAIRS OUTSIDE OF NORMAL BUSINESS HOURS: Brink's will endeavor to comply with your request for repair outside of Brink's normal business hours. You agree to pay for this repair work at Brink's prevailing premium labor rates. You will not be charged if you are covered by an Extended Service Plan.
(e) CHARGEABLE REPAIRS: You agree to pay Brink's applicable labor charges for any repair work which is not covered by the initial ninety day free repair service or an Extended Service Plan. YOU WILL NOT BE CHARGED FOR REPLACEMENT PARTS UNLESS DAMAGED BY EVENTS OR CONDITIONS BEYOND BRINK'S CONTROL AND EXCLUDING SECURITY WINDOW SCREENS AND CURTAINS.
(f) You agreed to immediately notify Brink's of any defect or failure in operation or functioning of the Protective Equipment. You may schedule repair service and obtain information on Brink's rates by telephoning Brink's toll free at 1-800-445-0872. Brink's reserves the right to substitute new or reconditioned parts of equal quality in performing repairs at any time. If at any time you request service and fail to be available at the scheduled time to allow access to your premises, Brink's may charge you its then effective rate for a service call. YOU AGREE TO TEST THE PROTECTIVE EQUIPMENT AT LEAST MONTHLY IN ACCORDANCE WITH THE INSTRUCTIONS WHICH YOU ACKNOWLEDGE YOU HAVE RECEIVED FROM BRINK'S.

**Section 7. LIMITATION OF LIABILITY:**
(a) BRINK'S DOES NOT MAKE ANY EXPRESS OR IMPLIED WARRANTY AND IN PARTICULAR DOES NOT MAKE ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. FURTHER, BRINK'S DOES NOT WARRANT: THAT THE PROTECTIVE EQUIPMENT OR THE SERVICE WILL NOT BE DISABLED, COMPROMISED OR CIRCUMVENTED (WHETHER BY CUTTING OF TELEPHONE LINES OR IN SOME OTHER WAY); THAT THE PROTECTIVE EQUIPMENT WILL NOT BE IN NEED OF REPAIR; THAT THE PROTECTIVE EQUIPMENT OR SERVICE WILL PREVENT ANY LOSS OF PROPERTY OR PERSONAL INJURY BY BURGLARY, HOLD-UP, FIRE, MEDICAL PROBLEM OR OTHERWISE; OR THAT THE PROTECTIVE EQUIPMENT AND SERVICE WILL IN ALL CASES PROVIDE THE PROTECTION FOR WHICH IT IS INSTALLED. YOU UNDERSTAND THAT UNLESS YOU HAVE PURCHASED BRINK'S CELLULAR BACKUP, ALARM SIGNALS WILL BE SENT OVER REGULAR TELEPHONE LINES TO THE BRINK'S MONITORING CENTER. INTERRUPTION OF TELEPHONE SERVICE WILL PREVENT ALARM SIGNAL TRANSMISSION.
(b) YOU UNDERSTAND THAT BRINK'S IS NOT AN INSURER AND IS NOT RESPONSIBLE FOR ACTS OR OMISSIONS OF OTHERS OR FOR EVENTS BEYOND BRINK'S CONTROL. Your payment of fees and other amounts to Brink's under this Agreement relates only to the value of the Service (and, if applicable, to the sales price of Protective Equipment) and has no relationship to, nor do Brink's or you expect them to cover, in whole or in part, any loss, damage, injury or death which might result to you or your property or to any other person or property from any hazard or event or the consequence of any hazard or event which the Protective Equipment or the Service is intended to detect or avert. THE AMOUNTS PAYABLE BY YOU UNDER THIS AGREEMENT ARE NOT SUFFICIENT TO WARRANT BRINK'S ASSUMING ANY RISK OF CONSEQUENTIAL OR OTHER DAMAGES TO YOU. EXCEPT AS STATED IN SECTION 7(e) BELOW, YOU DO NOT DESIRE THIS AGREEMENT TO PROVIDE FOR THE LIABILITY OF BRINK'S AND YOU AGREE THAT BRINK'S SHALL NOT BE LIABLE FOR LOSS OR DAMAGE DUE DIRECTLY OR INDIRECTLY TO ANY OCCURRENCE OR CONSEQUENCES THEREFROM, WHICH THE SERVICE IS DESIGNED TO DETECT OR AVERT. IN NO EVENT SHALL BRINK'S BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES HOWSOEVER CAUSED.
(c) YOU AND BRINK'S AGREE THAT YOU HAVE THE SOLE RESPONSIBILITY TO OBTAIN WHATEVER INSURANCE YOU WANT TO HAVE IN ORDER TO COVER RISKS, LOSSES, DAMAGES, INJURIES, DEATH AND OTHER EFFECTS OF BURGLARY, FIRE, PHYSICAL DANGERS OR MEDICAL PROBLEMS AFFECTING YOU, YOUR FAMILY OR ANY OTHER PERSONS WHO MAY BE IN OR NEAR YOUR LOCATION. YOU HEREBY AGREE TO RELEASE, DEFEND, INDEMNIFY AND HOLD BRINK'S AND ITS AUTHORIZED CONTRACTORS HARMLESS FROM AND AGAINST CLAIM OR LIABILITY FOR ANY RISK, LOSS, PROPERTY DAMAGE, PERSONAL INJURY, DEATH AND OTHER EFFECTS MENTIONED ABOVE AT YOUR SOLE COST AND EXPENSE INCLUDING ATTORNEY'S FEES.
(d) You acknowledge that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from Brink's failure to perform any of the obligations under this Agreement, or the failure of the Protective Equipment to properly operate with resulting loss to you or others because of, among other things:
(1) The uncertain amount or value of your property or the property of others kept on the premises which may be lost, stolen, destroyed, damaged or otherwise affected by occurrences which the Protective Equipment or Service is designed to detect or avert;
(2) The uncertain amount of possible damages for personal injury or death which may result from occurrences which the Protective Equipment or Service is designed to detect or avert;
(3) The uncertainty of the response time of any police or fire department or medical emergency agency, should the police or fire department or medical emergency agency be dispatched as a result of a signal being received or an audible device sounding;
(4) The inability to ascertain what portion, if any, of any loss or damage would be proximately caused by Brink's failure to perform or by the failure of the Protective Equipment to operate; and
(5) The nature of the Service to be performed by Brink's.
(e) If Brink's or its authorized contractors do not provide the Service or otherwise fail to perform any obligation undertaken by any of them under this Agreement or are liable under negligence, strict liability, breach of warranty, breach of contract or otherwise, YOU UNDERSTAND AND AGREE THAT BRINK'S AND ITS AUTHORIZED CONTRACTORS' LIABILITY TO YOU AND ALL OTHER PERSONS IS LIMITED TO A TOTAL RECOVERY DURING THE WARRANTY PERIOD AND THEREAFTER OF NOT MORE THAN THE TOTAL AMOUNT OF FEES ACTUALLY PAID TO BRINK'S UNDER SECTION 2(b) OF THIS AGREEMENT DURING THE TWELVE-MONTH PERIOD PRECEDING THE EVENT OR OMISSION FOR WHICH YOU AND ALL OTHER PERSONS MAY MAKE A CLAIM AGAINST BRINK'S OR ITS AUTHORIZED CONTRACTORS. YOU ACCEPT RESPONSIBILITY FOR ANY LIABILITY BEYOND THESE LIMITS AND YOU WILL MAINTAIN YOUR OWN INSURANCE COVERAGE AS YOU DESIRE TO PROTECT YOU AND OTHERS FROM ANY LOSSES EXCEEDING THESE LIMITS. YOU WILL LOOK SOLELY TO THE PROCEEDS OF SUCH INSURANCE FOR ANY LOSS, LIABILITY, DAMAGE OR CLAIM ABOVE THE LIMITS OF BRINK'S LIABILITY TO WHICH YOU AGREE IN THIS SECTION 7. YOU FURTHER AGREE THAT THE REMEDY AND LIABILITY AS LIMITED IN THIS SECTION 7 IS THE SOLE AND EXCLUSIVE REMEDY AND LIABILITY. IF YOU WISH, YOU MAY OBTAIN A HIGHER LIMITATION OF BRINK'S LIABILITY BY PAYING AN ADDITIONAL CHARGE TO BRINK'S. YOU MAY OBTAIN INFORMATION ABOUT THIS OPTION BY TELEPHONING BRINK'S CUSTOMER SERVICE DEPARTMENT AT (800) 445-0872.

**Section 8. INDEMNITY:**
In the event that any guest, tenant or other person shall make any claim or file any lawsuit against Brink's relating to the Protective Equipment at the installation address or the performance of the Service or any act or failure to act on your part, you shall release, defend, indemnify, and hold Brink's harmless from and against any such claims and lawsuits. This indemnity includes the payment of all damages, expenses, costs and attorney's fees, whether these claims be based upon active or passive negligence, warranty, or strict product liability on the part of Brink's, its agents, servants or employees. You shall immediately notify your insurance carrier of such a claim or lawsuit for defense and/or payment of the claim.

**Section 9. INSPECTION AND REMOVAL OF PROTECTIVE EQUIPMENT:**
You will allow Brink's free access to the Protective Equipment at all reasonable times for the purpose of inspection and for any other purpose contemplated by this Agreement. After this Agreement terminates for any reason, Brink's has the right to remove the Protective Equipment from your location (unless you paid the additional charge to purchase the Protective Equipment). Brink's will bear the cost of removal. You are responsible for restoration work.

**Section 10. CUSTOMER DEFAULT; BRINK'S REMEDIES:**
(a) You will be in default and breach of this Agreement if:
(1) you fail to pay to Brink's any fees, charges or other amounts within ten days of when due, or you fail to comply with any of the other terms of this Agreement, and your failure to continues for 10 days after Brink's gives you written notice; or
(2) you terminate this Agreement prior to the expiration of the term of this Agreement.
(b) If you are in default or breach of this Agreement, in addition to any other remedies provided by law, Brink's may do any of all of the following without releasing you:
(1) by notice to you, terminate this Agreement;
(2) with or without terminating this Agreement, remove and take possession of the Protective Equipment wherever located (unless you paid the additional fee to purchase the Protective Equipment), and for the purpose of taking possession, enter upon your location without liability for doing so (if you refuse to allow removal, Brink's may recover the retail sales price of the Protective Equipment);
(3) by notice to you, declare immediately due and payable an amount (which Brink's and you agree is a reasonable determination of Brink's damages) equal to all fees to be paid by you during the remaining term (initial or renewal) of this Agreement;
(4) sell, dispose of, hold, lease or otherwise use the Protective Equipment as Brink's determines in its sole discretion without any duty to account to you (unless you paid the additional fee to purchase the Protective Equipment). ALL REMEDIES PROVIDED FOR HEREIN ARE DEEMED TO BE CUMULATIVE. Any subsequent acceptance by Brink's of any payments by you under this Agreement does not by itself constitute a waiver of an existing default or breach, regardless of whether Brink's knows about your default or breach when it accepts your payment.
(c) Under applicable laws you may have certain rights in case of your default or breach. Also, certain of Brink's rights described in Section 10(b) above may be subject to restrictions. Brink's will comply with any applicable laws.

**Section 11. NOTICES:**
All notices under this Agreement are to be by telephone or in writing and are to be sent by U.S. mail, postage prepaid, addressed as follows:
If to Brink's: 8880 Esters Boulevard, Irving, Texas 75063,
  Attention: Customer Service
  or 1-800-445-0872
If to you: To your billing address or the address or phone number written in the Installation Work Order.
You or Brink's will notify the other in writing of any change of address for the purpose of giving notices under this Agreement. Notices are effective when sent.

**Section 12. GENERAL LEGAL MATTERS:**
(a) The entire agreement between you and Brink's consists of this Protective Service Agreement and the following, which together supersede any and all other agreements, understandings or representations:
  Customer Emergency Information Schedule
  Installation Work Order
  Notice of Cancellation Form
Brink's is not bound by any change or waiver of any provision of the foregoing unless an authorized official of Brink's signs the change or waiver.
(b) If a court or arbitrator determines any provision in the entire Agreement between you and Brink's to be invalid or unenforceable, that provision will be null and void to the extent determined by the court or arbitrator. However, each other provision in the entire Agreement will continue to be valid and enforceable.
(c) The terms of this Agreement will be binding upon your estate and the successors and assignees of Brink's. Your rights and obligations under this Agreement may not be assigned. However, if a new owner of your location agrees to sign a monitoring agreement with Brink's and pays the applicable programming charges, Brink's will release you from your obligations under this Agreement. This Agreement is not transferable to a different location. Brink's may assign this Agreement without your consent. Brink's may perform its obligations through a subcontractor.
(d) The laws of the state of the installation location govern the validity, enforceability and interpretation of this Agreement.
(e) LIMITATION ON ACTIONS; WAIVER OF JURY TRIAL
You and Brink's agree that no suit or action that relates in any way to this Agreement (whether based upon contract, negligence or otherwise) shall be brought against the other more than two (2) years and one (1) day after the accrual of the cause of action therefore. You and Brink's also waive any rights to a jury trial in any judicial action brought by either party which relates in any way to this Agreement (whether based upon contract, negligence or otherwise).

BH-1104-GEN REV 10/99

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL E. PARTRIDGE,<br>PAUL E. PARTRIDGE, JR.<br><br>*Plaintiffs,*<br><br>v.<br><br>APPLICA CONSUMER PRODUCTS, INC.,<br>BRINK'S HOME SECURITY, INC.<br><br>*Defendants.* | Civil Action No. 05-10601-MLW |

### AFFIDAVIT OF DON BREAUX

I, Don Breaux, being duly sworn, depose and state the following based upon my personal knowledge:

1. I am the Director of Customer Financial Services at Brink's Home Security, Inc. ("Brink's"), a defendant in this action. I submit this affidavit in support of Brink's Motion to Dismiss the Complaint in the above-captioned action.

2. I am aware that Paul E. Partridge entered into a contract with Brink's on December 12, 2000 for the installation and maintenance of a home security system. The contract provided that plaintiffs could pay an additional charge at the time of installation to purchase the equipment.

3. I have reviewed the records relating to Partridge's account. At no time did Partridge pay an additional charge to purchase the equipment.

4. At all times, Brink's has remained the owner of the equipment.

Subscribed and sworn to under the pains and penalties of perjury on this 18th day of April 2005.

                                                    Don Breaux
                                        Director Customer Financial Services